IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| ENTREPRENEUR MEDIA, INC., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:12cv1375 (TSE/JFA) |
| ENTREPRENEURSSTARTUP.COM, an Internet Domain Name, | ) |
| Defendant. | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Docket no. 15). In this *in rem* action involving the domain name <entrepreneursstartup.com> (the "defendant domain name"), the plaintiff Entrepreneur Media, Inc. ("EMI") seeks a default judgment ordering that the registrar of the defendant domain name be changed to EMI's registrar so the defendant domain name can be registered by EMI. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On November 29, 2012, EMI filed its verified complaint for injunctive relief ("complaint") pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). (Docket no. 1). On November 29, 2012, EMI sent a letter and a copy of the complaint to the entity listed in the WHOIS database as the registrant of the defendant domain name by e-mail and certified mail. (Docket no. 6, Ex. A). On November 29, 2012, EMI also

sent a letter and a copy of the complaint to an e-mail address associated with the website available at the defendant domain name. *Id.*[1] On December 5, 2012, EMI filed a motion for an order to publish notice of action together with a memorandum in support. (Docket nos. 5, 6). On December 5, 2012, an order was entered directing EMI to provide notice of this action by publication in accordance with the ACPA. (Docket no. 9). The order providing notice of this action was published in *The Washington Times* on December 10, 2012, and on January 2, 2013, EMI filed a declaration describing compliance with the order directing publication of notice of this action. (Docket no. 10).

On January 30, 2013, EMI filed an amended complaint that added information concerning the registrant of the defendant domain name that was learned after the filing of the initial complaint. (Docket no. 11). The amended complaint was sent by regular mail and electronic mail to the entity listed as the registrant in the WHOIS database and to the person who the registrar stated had registered the defendant domain name and requested that a privacy service be listed as the registrant on the WHOIS database. (Docket no. 11). Other than the claim made by EMI, no response, claim, or other pleading has been filed asserting any right to the defendant domain name.

On March 14, 2013, EMI filed its request for entry of default (Docket no. 12) and the Clerk of Court entered default against the defendant domain name on March 15, 2013 (Docket no. 13). On April 5, 2013, EMI filed and served its motion for default judgment, a memorandum in support of the motion, and a notice of hearing for April 12, 2013. (Docket nos. 15-17). On April 12, 2013, counsel for EMI appeared at the hearing on the motion for default judgment

---

[1] EMI also sent letters on August 1 and October 5, 2012 to the listed registrant and to an e-mail address associated with the website at the defendant domain name putting them on notice of EMI's trademark registrations and requesting that the defendant domain name be transferred to EMI. (Docket no. 6, Ex. A).

before the undersigned magistrate judge and no claimant appeared on behalf the defendant domain name.

## Factual Background

The following facts are established by the amended complaint[2] (Docket no. 11) and the memorandum in support of the motion for default judgment (Docket no. 16). EMI is a California corporation with its principal place of business in Irvine, California. (Compl. ¶ 8). At the time the complaint was filed, the registrant of the defendant domain name was listed in the WHOIS database as being "Whois Privacy Protection Service, Inc." (Compl. ¶ 9). After the initial complaint was filed, the registrar informed EMI that the person registering the defendant domain name was Kethan Uppalapati with an address in India. *Id.*

EMI is a publisher of magazines and business guides, including the Entrepreneur Magazine and other publications. (Compl. ¶ 10). The Entrepreneur Magazine is published monthly with a current paid circulation of more than 600,000 and it is sold and distributed in over 100 foreign countries. *Id.* EMI owns a family of trademarks and service marks comprised of or featuring the mark ENTREPRENEUR, including the mark ENTREPRENEUR'S STARTUPS (the "Entrepreneur marks"). (Compl. ¶¶ 13-15). EMI owns rights and interest in the Entrepreneur marks for various goods and services in a number of international classes including U.S. Trademark Registration Nos. 1,453,968; 3,520,633; 2,502,032; 2,263,883; and 3,204,899, and those registrations are valid and in full force and effect. (Compl. ¶¶ 13, 14). EMI also owns rights and interest in trademarks and service marks incorporating the Entrepreneur mark for use in connection with various media outlets, including printed and digitized books and online and/or Internet services including U.S. Trademark Registration Nos. 3,470,064; 3,519,022; 3,470,063; 3,266,532; 3,374,476; and 3,652,950, and those registrations are valid and

---

[2] Citations to the amended complaint are noted as "Compl. ¶ _".

in full force and effect. (Compl. ¶ 15). EMI owns and operates a number of websites, including <www.entrepreneur.com> through which it disseminates editorial content and other information, as well as offers products and services. (Compl. ¶ 12). This website averages over 7 million unique visitors per month and over 57 million page views per month. *Id.*

EMI has used the Entrepreneur mark continuously since 1978 to identify its magazines, business guides and other books, and seminars and other educational events in the United States and worldwide. (Compl. ¶ 11). EMI asserts that it has continuously and extensively used, advertised, marketed, and promoted the Entrepreneur marks in the United States and many foreign countries in connection with goods and services, including its magazines and other publications. (Compl. ¶ 17). EMI states that it has spent millions of dollars and has expended significant effort in promoting its goods and services under the Entrepreneur marks through various means, including its Internet website at <www.entrepreneur.com>. *Id.* EMI claims that as a result of its substantial investment in developing and promoting the Entrepreneur marks, they have come to identify and distinguish EMI's goods and services and represent enormous goodwill of great value belonging to EMI. *Id.*

EMI alleges that its use and registration of the Entrepreneur marks in the United States, including the mark ENTREPRENEUR'S STARTUPS, predate the registration of the defendant domain name. (Compl. ¶ 16). The registry for the defendant domain name is VeriSign, Inc., located in the Eastern District of Virginia. (Compl. ¶ 6). The defendant domain name includes EMI's Entrepreneur Mark in its entirety and is substantially identical to the ENTREPRENEUR'S STARTUPS mark. (Compl. ¶ 19). EMI claims that the defendant domain name is confusingly similar to the Entrepreneur marks and is likely to cause confusion or mistake as to whether EMI is the source of, is affiliated with, or endorses the defendant domain name. (Compl. ¶¶ 21, 22).

4

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to the defendant domain name in a timely manner, the Clerk of Court has entered a default. (Docket no. 13).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. EMI's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the defendant domain name under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). EMI owns federally-registered trademarks

for ENTREPRENEUR and ENTREPRENEUR'S STARTUPS and it claims that its rights in those marks are being violated by the registration and use of the defendant domain name. The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Given that the registrant of the defendant domain name resides in India and does not appear to have any ongoing business activities in the United States, EMI has established that it is unable to obtain personal jurisdiction over the registrant of the defendant domain name.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc., which has offices within this district and division, is the exclusive registry controlling the top-level domain <.com>, including the defendant domain name.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the defendant domain name, and that venue is proper in this court.

### Service

At the time EMI filed the complaint, Whois Privacy Protection Service, Inc. was listed as the registrant for the defendant domain name with the registrar eNom. (Compl. Ex. A). On November 29, 2012, counsel for EMI sent a copy of the complaint to the listed registrant for the defendant domain name at the e-mail and postal address provided to the registrar and to an e-

mail address for "Kethan" associated with the website posted at the defendant domain name. (Docket no. 6, Ex. A).

On December 5, 2012, EMI filed its motion for an order to publish notice of action. (Docket no. 5). Pursuant to the court's December 5, 2012 order of publication (Docket no. 9), EMI published notice of this action in *The Washington Times* on December 10, 2012. (Docket no. 10). As set forth in the notice of action, any person claiming an interest in the defendant domain name was required to file an answer or other response to the complaint within twenty-one (21) days from the date of the publication of the order in *The Washington Times*. The twenty-one day time period for filing an answer or claim expired on December 31, 2012. In addition, on January 30, 2013, a copy of the amended complaint was sent by regular mail and e-mail to Whois Privacy Protection Service, Inc. and to Kethan Uppalapati at the postal and e-mail addresses provided to EMI's counsel by the registrar eNom. (Docket no. 11).

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). EMI has complied with these provisions. For these reasons, the undersigned recommends a finding that service of process has been accomplished in this action.

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a) and as stated in the order of publication, anyone asserting a claim to the defendant domain name was required to file an answer or response with the Clerk of Court by December 31, 2012. No responsive pleading or claim was filed by either a named registrant or anyone else claiming ownership to the defendant domain name and on March 14,

2013, EMI filed its request for entry of default. (Docket no. 12). The Clerk of Court entered a default on March 15, 2013. (Docket no. 13). On April 5, 2013, EMI filed its motion for default judgment, supporting memorandum, and the notice of hearing and a copy of those pleadings was sent to the registrant by regular mail and electronic mail. (Docket nos. 15-17).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the defendant domain name in a timely manner, and that the Clerk of Court properly entered a default as to the defendant domain name.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the amended complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The relief sought in the amended complaint is for the court to order the registry (VeriSign, Inc.) to change the registrar for the defendant domain name (eNom) to a registrar of EMI's choice, and that the registrar be ordered to transfer the registration of the defendant domain name to EMI. (Docket no. 11). The notice that was published pursuant to the ACPA provided that one of the remedies available under the ACPA was the transfer of the defendant domain name to the plaintiff in this action. (Docket nos. 9, 10).

To state a claim under the ACPA, EMI must prove that the defendant domain name and/or its registrant(s) registered, trafficked in, or used the defendant domain name with a bad faith intent to profit and that the defendant domain name is either identical or confusingly similar to a distinctive mark owned by EMI, or, upon a finding that a mark owned by EMI is famous, that the defendant domain name is identical or confusingly similar to, or dilutive of, EMI's

famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registrations of the Entrepreneur marks on the Principal Register are *prima facie* evidence that the marks are at least descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, secondary meaning is typically found where there are extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has been used exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Here, EMI obtained a registration for the Entrepreneur mark, U.S. Trademark Registration No. 1,453,968, for paper goods and printed matter, namely magazines, books and published reports pertaining to business opportunities (class 16), and computer programs and program user manuals all sold as a unit (class 9) on August 25, 1987. (Compl. Ex. F). EMI has obtained additional registrations including the Entrepreneur mark as shown in exhibits F, G and H to the amended complaint. (Docket no. 11). EMI states that it has used the Entrepreneur marks continuously in interstate commerce in connection with its magazines and other business services since 1978. (Compl. ¶¶ 11, 17). EMI has invested substantial sums in advertising the Entrepreneur marks and has made extensive use of the Entrepreneur marks by providing its goods and services throughout the United States and abroad, including through its domain name <entrepreneur.com>. (Compl. ¶ 17). Through EMI's considerable investments in the Entrepreneur marks, EMI has achieved substantial goodwill in the Entrepreneur marks. *Id.* For these reasons, the undersigned magistrate judge recommends a finding that the Entrepreneur marks are at least distinctive.

The next consideration is whether the defendant domain name is identical or confusingly similar to the Entrepreneur marks. Based on the uncontested allegations in the amended complaint, the undersigned magistrate judge recommends a finding that the defendant domain name is confusingly similar to the Entrepreneur marks. The registration and use of the defendant domain name is likely to cause confusion among the public, including customers of EMI, because the "dominant or salient portions" of the defendant domain name and the Entrepreneur marks are identical. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location.").

Having recommended a finding that the Entrepreneur marks are distinctive and that the defendant domain name is confusingly similar to the Entrepreneur marks, the remaining question is whether the defendant domain name was registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the defendant domain name was registered and used with the bad faith intent to profit from the Entrepreneur marks:

1. The Entrepreneur marks, which have been incorporated into the defendant domain name, are distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2. The registrant does not have any valid trademark or intellectual property rights in the Entrepreneur marks or the defendant domain name within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3. The defendant domain name does not consist of the registrant's legal name, nor does it in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4. The registrant has not used the defendant domain name in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) since the use of the Entrepreneur mark was without permission from ESI, the mark's owner;

5. The registrant has not used the defendant domain name for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

6. The registrant's intent in obtaining the registration for the defendant domain name and using the defendant domain name to provide content similar to that provided by EMI was to divert EMI's consumers and to profit from the goodwill of the Entrepreneur marks, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V); and

7. The registrant used a privacy service in registering the defendant domain name, which may be interpreted as an attempt to avoid providing accurate contact information within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision"). For these reasons, the undersigned magistrate judge

recommends a finding that the registrant's actions have violated the ACPA, and that an order be entered requiring the registry VeriSign, Inc. to change the registrar of record for the domain name <entrepreneursstartup.com> from eNom to EMI's registrar of choice, GoDaddy.com, LLC, and that GoDaddy.com, LLC then take the necessary steps to have Entrepreneur Media, Inc. listed as the registrant for the defendant domain name.

## NOTICE TO PARTIES

Failure to file written objections to these proposed findings of fact and recommendations within fourteen (14) days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the defendant domain name at Kethan Uppalapati, Flat No. 101, Highlight Homes, Street No. 14, Tarnaka Secundrabad, Andhra Pradesh 500017 and to Whois Privacy Protection Service, Inc., Whois Agent, PMB 368, 14150 N.E. 20th Street – F1, Bellevue, WA 98007.

Entered this 15th day of April, 2013.

/s/
John F. Anderson
United States Magistrate Judge
United States Magistrate Judge

Alexandria, Virginia